UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
ANGELA LYNN H.,

                        Plaintiff,        <u>DECISION AND ORDER</u>
                                                   7:24-CV-04107-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

     In February of 2022, Plaintiff Angela Lynn H.[1] applied for

Supplemental Security Income benefits under the Social Security Act. The

Commissioner of Social Security denied the application.  Plaintiff,

represented by Dennis Kenny Law, Josephine Gottesman, Esq., of

counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 10).

     This case was referred to the undersigned on April 21, 2025.

Presently pending is Plaintiff's Motion for Remand for Further

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Administrative Proceedings, which the Court construes as a motion for

judgment on the pleadings pursuant to Rule 12 (c) of the Federal Rules of

Civil Procedure. (Docket No. 12). For the following reasons, Plaintiff's

motion is due to be denied, and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on February 3, 2022, alleging disability

beginning November 7, 2021. (T at 20).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").

A hearing was held on July 11, 2023, before ALJ Kieran McCormack.

(T at 41-86). Plaintiff appeared with an attorney and testified. (T at 49-79).

The ALJ also received testimony from a vocational expert. (T at 79-83).

### B.    ALJ's Decision

On July 27, 2023, the ALJ issued a decision denying the application

for benefits. (T at 17-40).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since February 3, 2022 (the date she applied for

benefits). (T at 22).  The ALJ concluded that Plaintiff's epilepsy (status-post

right occipital and temporal craniotomies for placement of depth and strip

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

electrode on November 9, 2021, and right anterior lobectomy, hippocampectomy, and subfrontal resection on November 16, 2021); adjustment disorder; and major depressive disorder were severe impairments as defined under the Social Security Act. (T at 23).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 23).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations: she can perform work that does not require the operation of motor vehicles or heavy machinery and/or exposure to unprotected heights, unprotected machinery, and/or machinery with moving mechanical parts. (T at 26).  In addition, the ALJ found Plaintiff limited to "low stress" jobs, defined as jobs containing no more than simple, routine, and repetitive tasks and simple work-related decisions; and containing no more than occasional workplace changes. (T at 26).

The ALJ found that Plaintiff had no past relevant work. (T at 32).

However, considering Plaintiff's age (25 on the application date), education (at least high school), work experience (no past relevant work),

and RFC, the ALJ determined that there were jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  (T at 32-33).

As such, the ALJ found that Plaintiff had not been under a disability,

as defined under the Social Security Act, and was not entitled to benefits

for the period between February 3, 2022 (the application date) and July 27,

2023 (the date of the ALJ's decision). (T at 34).

On April 9, 2024, the Appeals Council denied Plaintiff's request for

review, making the ALJ's decision the Commissioner's final decision. (T at

1-6).

C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing

a Complaint on May 29, 2024. (Docket No. 1).  On September 4, 2024,

Plaintiff filed a motion for remand for further administrative proceedings,

supported by a memorandum of law. (Docket Nos. 12, 13).  The

Commissioner interposed a brief in opposition to the motion and in support

of a request for judgment on the pleadings, on October 30, 2024. (Docket

No. 16).  On March 24, 2025, Plaintiff submitted a reply memorandum of

law in further support of her motion. (Docket No. 20).

## II.  APPLICABLE LAW

*A.    Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff challenges the ALJ's assessment of her residual functional capacity ("RFC"), arguing that it does not adequately account for her physical and mental limitations.  Second,

she argues that the ALJ's step five analysis is flawed.  The Court will address each argument in turn.

> A.    RFC

A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

> 1. *Physical Limitations*

Plaintiff contends that the ALJ's RFC determination does not adequately account for the impact of her epilepsy on her ability to meet the demands of basic work activity.  She points to evidence of abnormal brain findings, seizures, weight loss, pain, and memory problems. (T at 53-59, 71-73, 967, 993, 1181, 1245, 1256-58, 1260, 1655, 1659, 1667, 1698-1700).

As noted above, ALJ recognized Plaintiff's epilepsy as a severe impairment, but determined that she retained the RFC to perform work at all exertional levels, with the following non-exertional physical limitations: she can work at jobs that do not require the operation of motor vehicles or heavy machinery and/or exposure to unprotected heights, unprotected machinery, and/or machinery with moving mechanical parts. (T at 23, 26).

The Court finds the ALJ's conclusion that Plaintiff could meet the physical demands of basic work activity, provided she was not exposed to workplace hazards and environmental dangers, is supported by substantial evidence and must be sustained under the deferential standard of review applicable here. Here's why.

First, the ALJ reasonably read the record as showing Plaintiff's epilepsy to be conservatively treated and well-controlled with medication. (T at 27).  Other than two seizures in 2022 after Plaintiff missed a dose of medication (T at 28, 1181), she has been seizure-free since 2021. (T at 28, 57-59).  Plaintiff's physical and neurological examinations since the alleged onset date were generally unremarkable, with no noted sensory deficits and normal motor strength. (T at 28, 1183, 1198-99, 1211, 1247-48, 1287, 1292, 1630, 1715, 1735, 1760, 1804, 1827, 1842).

Second, the ALJ's assessment is supported by the medical opinion evidence. (T at 28-29).

Dr. Kautilya Puri performed a consultative examination in May of 2022.  On examination, Plaintiff was in no acute distress, exhibited normal gait, and demonstrated full muscle strength and no sensory deficits. (T at 1174-75).  Dr. Puri diagnosed low back pain and generalized seizures. (T at 1175).  Dr. Puri recommended that Plaintiff not work from height, with heavy machinery, or be allowed to drive. (T at 1175).  Dr. Puri assessed mild impairment as to Plaintiff's ability to squat, bend, stoop, kneel, and lift weights, but otherwise found no objective limitation as to her gait, activities of daily living, or fine and gross motor abilities. (T at 1175).

In September of 2022, Dr. M. Kirsch, a non-examining State Agency review physician, opined that Plaintiff had no exertional limitations, but should avoid exposure to hazards. (T at 124-27).

Plaintiff argues that the ALJ should have further developed the record by seeking an assessment of her work-related limitations from one of her treating providers.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and

against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

However, the ALJ's duty to develop the record is "robust," but "not unlimited.'' *Clarke v. Comm'r of Soc. Sec.*, No. 19-CV-7213 (BCM), 2021 WL 2481909, at *13 (S.D.N.Y. June 16, 2021)(quoting *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012)).

"[A]n ALJ is not required to attempt to obtain additional evidence to fill *any* gap in the medical evidence; rather an ALJ is required to do so only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly." *Francisco v. Comm'r of Soc. Sec.*, No. 13CV1486 TPG DF, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015)(emphasis in original); *see also Sampson v. Saul*, No. 19CIV6270PAESN, 2020 WL 6130568, at *6 (S.D.N.Y. Oct. 16, 2020).

Here, the record contains multiple medical opinions and extensive documentation regarding Plaintiff's physical impairments and treatment. The ALJ provided a detailed, well-reasoned analysis, including consideration of the medical opinions, and reached conclusions supported by substantial evidence.

Further development of the record was not necessary under the circumstances, particularly since Plaintiff was represented by counsel

during the administrative proceedings. *See Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) ("Although Curley argues that the ALJ should have obtained a medical opinion … from one of Curley's providers, Curley does not explain why neither he nor his counsel requested such an opinion.")

Lastly, the ALJ gave appropriate weight to Plaintiff's activities of daily living, which included personal care, part-time employment, and simple chores. (T at 31, 51-53, 66-70). *See Teresa G. v. Comm'r of Soc. Sec.*, No. 20-CV-0816-MJR, 2021 WL 1559177, at *6 (W.D.N.Y. Apr. 21, 2021) (holding that ALJ reasonably considered "plaintiff's ability to do routine activities, work part-time, and record evidence of normal examination findings" in finding she could perform her past relevant light work).

In sum, the Court concludes that the ALJ's assessment of Plaintiff's RFC takes adequate account of her physical impairments, including epilepsy, and the ALJ's decision must therefore be sustained under the deferential standard of review applicable here. *See, e.g., Russell v. Berryhill*, No. 3:18-CV-00450 (VLB), 2019 WL 1385105, at *9 (D. Conn. Mar. 27, 2019); *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 (BKS/CFH), 2024 WL 4217371, at *11 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, No. 1:23-CV-00652 (BKS/CFH), 2024 WL

4216048 (N.D.N.Y. Sept. 17, 2024); *Jessica E. v. Saul*, No. 5:18-CV-543-CFH, 2019 WL 3776157, at *6 (N.D.N.Y. Aug. 12, 2019).

### 2. Mental Limitations

Plaintiff contends that her mental limitations, including memory and concentration problems, depression, and difficulties with stress, would preclude the performance of full-time work.

As noted above, the ALJ found that Plaintiff retained the RFC to meet the mental demands of "low stress" jobs, defined as jobs containing no more than simple, routine, and repetitive tasks and simple work-related decisions; and containing no more than occasional workplace changes. (T at 26).

For the following reasons the Court finds the ALJ's assessment is supported by substantial evidence.

First, the ALJ relied on a reasonable reading of the record. Mental status examinations during visits with treating medical providers were generally unremarkable and included findings of intact memory and appropriate orientation and attention. (T at 28, 1181-84, 1198-99, 1211, 1223-24, 1229-30, 1235, 1248, 1630, 1645, 1658-59, 1667-68). Likewise, mental status examinations conducted during mental health therapy were

generally normal. (T at 30, 1382, 1388, 1394, 1400, 1406, 1412, 1419, 1425, 1431, 1437).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount a claim of disabling limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Second, the ALJ considered Plaintiff's activities of daily living, which included managing her finances, socializing, working part-time, attending to chores, and going to the movies. (T at 27, 31, 51-52, 64-70).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount a claim of disability impairment where, as here, the claimant's activities could reasonably be considered inconsistent with that level of impairment. *See Riaz v. Comm'r of Soc. Sec*., No. 20CIV8418JPCSLC, 2022 WL 6564018, at *15 (S.D.N.Y. Aug. 5, 2022)(collecting cases), *report and recommendation adopted*, No. 20CIV8418JPCSLC, 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

Third, the ALJ's assessment is supported by a reasonable reconciliation of the medical opinion evidence.  (T at 30-31).

In April of 2022, Dr. Erika Frances, a State Agency review consultant, opined that Plaintiff had mild limitations in interacting with others and adapting or managing oneself and moderate limitations understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (T at 99-100). Dr. J. Weitzen, another review consultant, affirmed these findings in September of 2022. (T at 122-23).

"'[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'" *Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019)(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S.

15

Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)); *see also Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018)("Moreover, the opinion of a non-examining medical expert … may be considered substantial evidence if consistent with the record as a whole.").

Dr. Konstantinos Tsoubris performed a consultative psychiatric evaluation in April of 2022.   Dr. Tsoubris assessed moderate impairment in Plaintiff's ability to understand, remember, or apply simple directions and marked limitation as to complex directions; marked impairment in using reason and judgment to make work-related decisions and interact adequately with others; marked limitation in sustaining concentration and pace; marked impairment in sustaining an ordinary routine and regular attendance; and marked limitation with respect to regulating emotions, controlling behavior, and maintaining well-being. (T at 1010).

The ALJ found this opinion unpersuasive.  (T at 30).  The ALJ's conclusion is supported by substantial evidence.  The ALJ reasonably found the marked limitations assessed by Dr. Tsoubris inconsistent with the generally unremarkable mental status examination findings, with Plaintiff's reported activities of daily living, and with the other opinions of record, as set forth above. (T at 30).

Moreover, the ALJ did not dismiss the evidence of impairment in mental functioning. Rather, the ALJ accounted for the documented functional impairments by limiting Plaintiff to low-stress work, requiring only simple, routine, and repetitive tasks, involving simple work-related decisions, and containing only occasional changes. (T at 26). These limitations in Plaintiff's mental RFC adequately accounted for Plaintiff's impairment in mental functioning. *See Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y. Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

For the foregoing reasons, the Court finds the ALJ's assessment of Plaintiff's ability to meet the mental demands of basic work activity supported by substantial evidence.

B.    *Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 32-33).

In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of store laborer, hand packager, and package sorter, which exist in significant numbers in the national economy. (T at 24, 33, 79-80).

Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony, as that testimony was based on the *Dictionary of Occupational Titles*, which has not been updated since 1991 and which Plaintiff says is therefore outdated and unreliable.[3]

---

[3] The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles* ("DOT"), which is published by the Department of

This argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to support a contrary conclusion. *See Strong v. Berryhill*, No. 17-CV-1286F, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019)(collecting cases); *Johnson v. Saul*, No. 3:19-cv-01222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules."); *Harrison v. Comm'r of Soc. Sec.*, No. 20-CV-5282 (BCM), 2022 WL 1289357, at *11 (S.D.N.Y. Apr. 29, 2022).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand for Further Administrative Proceedings, which the Court construes as a motion for judgment on the pleadings (Docket No. 12) is DENIED; the Commissioner's request for Judgment on the Pleadings is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: May 9, 2025                          *s / Gary R. Jones*

                                            GARY R. JONES
                                            United States Magistrate Judge

---

Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).